# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| Heights Apartments, LLC, and Walnut Trails, LLLP, | Case No. 20-cv-2051 |
| Plaintiffs, | |
| v. | |
| Tim Walz, in his individual and his official capacity as Governor of the State of Minnesota, and Keith Ellison, in his individual and his official capacity as Attorney General of the State of Minnesota, and John Doe, | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |
| Defendants. | |

## Introduction and Procedural Posture

The Court needs no primer on the extent of the COVID-19 pandemic has affected the lives of Minnesotans and those around the country and the world. Its effects extend into every area of healthcare and the economy as a whole. As specific to the issues in this Complaint, however, the issue is what authority the current pandemic grants to the Governor of Minnesota to take executive action to indefinitely shut the courthouse doors to a category of claims without process or compensation when, in the Governor's sole discretion, redress of those claims is not in the public interest.

The Plaintiffs in this have contracts with their tenants, providing housing in exchange for both rent and an agreement from the tenants to follow certain rules relating to the management of their rental units and the quality of life for tenants around them.

Executive Orders signed by the Governor have substantially impaired those contracts, and are enacted in violation of the United States Constitution. This suit follows.

## Jurisdiction and Venue

1. Jurisdiction in the District of Minnesota is proper under 28 U.S.C. § 1331 (federal-question jurisdiction), 28 U.S.C. § 2201 (declaratory-judgment jurisdiction), and 42 USC §§ 1983, 1988 (civil-rights statutes).

2. Venue is proper in this Court under 28 U.S.C. § 1391 because the defendants are Minnesota public officials and reside within this district, and because the events or omissions giving rise to the claims presented occurred within this district.

## Parties

3. Plaintiff Heights Apartments, LLC is a Minnesota limited liability company domiciled in Minnesota. Plaintiff Heights is the owner of multiple rental properties in Minnesota and derives its income from the rent generated from those properties.

4. Plaintiff Walnut Trails, LLLP is a Minnesota limited liability limited partnership domiciled in Minnesota. Plaintiff Walnut Trails is the owner of a 168-unit apartment project in Eagan, Minnesota, and derives its income from the rent generated from those apartments.

5. Defendant Tim Walz is a resident of the State of Minnesota, and in his official capacity, is governor of the State of Minnesota. He is sued in both his individual and official capacities.

6. Defendant Keith Ellison is a resident of the State of Minnesota, and in his official capacity, is the Attorney General for the State of Minnesota. He is sued in both his individual and official capacities.

7. Defendant John Doe is a pseudonymous defendant representing the various city and county officials, or private individuals or law firms, to whom the State of Minnesota has delegated the authority to prosecute misdemeanor offenses including actions deemed to violate the Executive Orders outlined below, and whose identities cannot be ascertained at this time. John Doe is sued in that capacity.

## Factual Background

8. On March 13, 2020, in response to a global pandemic which had spread to Minnesota, the Governor signed "Executive Order 20-01: Declaring a Peacetime Emergency and Coordinating Minnesota's Strategy to Protect Minnesotans from COVID-19."

9. Since then, the Governor has issued eighty-three executive orders, 20-02 through 20-84. All executive orders are available through the Office of the Governor, and accessible online at https://mn.gov/governor/news/executiveorders.jsp (last accessed Sep. 24, 2020).

10. The Governor has claimed legal authority to issue these executive orders pursuant to Minn. Stat. § 12.31, subd. 2.

11. The Governor has issued subsequent executive orders extending the peacetime emergency for additional thirty-day periods with Executive Order 20-35 on April 13, 2020, Executive Order 20-53 on May 13, 2020, Executive Order 20-75 on June

12, 2020, Executive Order 20-78 on July 13, 2020, and Executive Order 20-83 on August 12, 2020. The last such order was Executive Order 20-89, issued September 11, 2020.

12. The executive orders extending the Governor's peacetime emergency powers have generally noted that the governor's asserted authority could only be rescinded by "a majority vote of each house of the legislature pursuant to Minnesota Statute 2019, section 12.31, subdivision 2(b)."

13. Defendant Gov. Walz, in his official capacity as Governor of the State of Minnesota, enacted Executive Orders 20-14 on Mar. 23, 2020, 20-73 on June 05, 2020, and 20-79 on July 14, 2020 (collectively, "EOs"), relating to terminations or non-renewals of tenancies, evictions, and writs of recovery.

14. These EOs were approved by the Executive Council on those same dates. The Executive Council consists of officers of the Executive Branch: Defendant Governor Walz, the Lieutenant Governor, the Secretary of State, the State Auditor, and Defendant Attorney General Ellison.

15. These EOs have never been codified into state law or ratified by an act of the Legislative Branch of the State of Minnesota.

16. The Judicial Branch of the State of Minnesota has issued orders related to COVID-19 and access to the courts, but has never issued an order adopting Defendant Gov. Walz's EOs at issue here.

17. These orders suspended "the ability to file an eviction action under Minnesota Statutes 2019, section 504B.285 or 504B.291" except under circumstances delineated in those orders.

18. The most expansive circumstances permitting evictions delineated in the EOs are those in EO 20-79, which permits the filing of an eviction "where the tenant:

    a. Seriously endangers the safety of other residents;
    b. Violates Minnesota Statutes 2019, section 504B.171, subdivision 1;
    c. Remains in the property past the vacate date after receiving a notice to vacate or nonrenewal under paragraph 4 of this Executive Order; or
    d. Materially violates a residential lease by the following actions on the premises, including the common area and the curtilage of the premises:
        i.   Seriously endangers the safety of others; or
        ii.  Significantly damages property."

    The EO also adds a new provision that even when an notice of termination, non-renewal, or eviction is authorized under the terms above, the property owner must still provide "written notice of intent" of at least seven days or the notice period provided in the lease, whichever is longer. Under Minnesota law, such notice periods are almost always one full calendar month.

19. EO-79, echoing similar language in EO 20-14 and EO 20-73, makes violation of this EO a criminal offense, and also allows Defendant Gen. Ellison to bring civil claims against them.

20. EO 20-14 notes that "Current laws and rules do not allow for cessation of notices to terminate tenancies, eviction actions, or issuing of writs of recovery during the COVID-19 pandemic."

5

21. By their terms, the EOs prevent landlords from terminating a tenancy or bringing an eviction action for breaches of the lease such as;

    a. Nonpayment of rent;

    b. Assaults on other tenants not deemed a "serious endangerment";

    c. Damage to property not deemed "significant";

    d. Materially interfering with the management of the property, such as refusing to allow access for maintenance, repairs, or inspections;

    e. Materially interfering with the use and enjoyment of the leased spaces for neighbors in a multi-unit building, such as smoking in common areas, harassment or theft from other residents, significant disturbances to other tenants such as loud parties, fights, or music, or leaving secured buildings unsecured;

    f. Exceeding the occupancy limit of the leased property, allowing non-lessees to live in the property, or non-lessees who claim the right of possession; or

    g. Abandoning the property.

22. By their terms, the EOs have turned every lease in Minnesota into an indefinite lease, terminable only at the option of the tenant except as noted above.

23. Because of the EOs, landlords who bring an eviction action, give a notice of termination, or give a notice of non-renewal of a lease in violation of the EOs are subject to both criminal and civil sanctions.

24. This threat of sanctions is not speculative. Defendant Gen. Ellison has brought at least four suits for sanctions against a landlord for violation of the EOs, and on

information and belief, has threatened such sanctions on others to gain compliance with the EOs.

Plaintiff Heights Apartments, LLC

25. Plaintiff Heights Apartments, LLC is a Minnesota limited liability company formed for the purpose of owning and renting real estate.

26. The lease agreements Heights has with its tenants contains a limitation on occupancy of non-tenants and a prohibition on using the running a business from the premises, an explicit notice of the right of the landlord to terminate the lease, to bring an eviction action, as well as an agreement of the tenants to comply with tenancy rules set by the landlord.

27. As laid out in examples below, Plaintiff Heights has been injured in its ability to conduct its business, comply with local authorities, and keep its covenants of quiet enjoyment with its tenants.

28. By way of examples to illustrate this harm, on March 27, 2020, mere days after EO 20-14 went into effect, Heights closed on the sale of three properties from the same seller by the terms of a purchase contract which pre-dated the EO. For the purposes of this Complaint and for the protection of the tenants, the properties are referred to only as Property A, Property B, and Property C, and tenants referred to by their initials only.

29. Property A is a four-unit building in Minneapolis entirely comprised of low-income tenants who receive subsidies for housing. These subsidies are provided by the federal government, and Heights has had no issues with the tenancies at Property A.

30. Property B is a seven-unit building in St. Paul, which by contrast has caused significant problems. One resident, R.U., is four months behind on rent and has been operating a car and boat repair shop in the parking lot in violation of city ordinances. Heights has received an order to abate the nuisance from the City of St. Paul, but despite numerous warnings, R.U. has not complied, and Heights has no way to force compliance with the City. Another resident, M.R., has not paid rent since EO 20-14 went into effect, and has an unauthorized resident living on the property in violation of the lease. M.R. and R.U. are so disruptive that they caused another tenant to move out, but Heights is hesitant to move another tenant into the vacant unit because of these problems. In Property B, only two units have regularly paid rent since the EO went into effect.

31. The violations of the residents in Property B would be sufficient to terminate their leases, not renew, or file eviction actions against them, but these options are not available to Heights because of the EOs at issue.

32. Property C is a six-unit building in Columbia Heights, which is also the source of significant problems. One resident, S.T., also has an unauthorized person living in the unit in violation of the lease, has not paid rent since EO 20-14 went into effect, and was the subject of two nuisance letters from the City of Columbia Heights. On December 27, 2019, Columbia Heights sent the previous property owner a notice demanding that S.T.'s lease be terminated and eviction proceedings started, under threat of loss of the rental license. However, despite the fact that Columbia Heights takes the position that eviction was warranted, Heights remains concerned that if

Columbia Heights is incorrect about the facts or if the tenant otherwise prevails, Heights could be subjected to civil and criminal penalties. Property C is also occupied by J.J., another tenant who is three months behind on rent, has an unauthorized tenant living in the property in violation of the lease, and has caused significant disturbances to other tenants due to frequent, loud, and large parties. In Property C, only three of the residents regularly pay rent.

33. The violations of the residents in Property C would be sufficient to terminate their leases, not renew, or file eviction actions against them, but these options are not available to Heights because of the EOs at issue.

34. As a result of the EOs at issue, Plaintiff Heights has been damaged.

Plaintiff Walnut Trails, LLLP

35. Plaintiff Walnut Trails, LLLP is a Minnesota limited liability limited partnership formed for the purpose of owning and renting real estate.

36. The lease agreements Walnut Trails has with its tenants contains a limitation on occupancy of non-tenants, an explicit notice of the right of the landlord to terminate the lease, to bring an eviction action, as well as an agreement of the tenants not to disturb other residents.

37. As laid out in examples below, Plaintiff Walnut Trails has been injured in its ability to conduct its business.

38. Plaintiff Walnut Trails is the owner of a 168-unit apartment complex in Eagan, Minnesota.

39. Since the enactment of the EOs at issue, the income to Plaintiff Walnut Trails, which it uses to pay for, maintain, and repair the rental property, has dropped precipitously.

40. Since the enactment of the EOs at issue, more than ten percent of the renters in the complex have not paid rent in full and on time, resulting in a loss of more than $36,000 in just the last six months.

41. These failures to pay rent would be sufficient to terminate the tenants' leases, not renew, or file eviction actions against them, but these options are not available to Walnut Trails because of the EOs at issue.

42. This sharp drop in revenue has caused not just an impairment of Plaintiff's business, but has forced it to raise the minimum rental requirements for tenancy. As a result, renters who otherwise would have qualified for tenancy in Plaintiff's building are no longer eligible, and its vacancy rate has risen.

43. As a result of the actions complained of above, Plaintiffs have suffered harm including but not limited to the loss of revenue, inability enforce the statutory and common-law covenants of quiet enjoyment, inability to ensure compliance with proper rules and regulations including applicable city, and state laws, inability to adequately address other breaches of contract, the loss of use and enjoyment of their property without compensation or due process, and the loss of their ability to seek redress in the courts.

**Count I:    Violations of the Contracts Clause of the United States Constitution**
**(Against Defendant Gov. Walz in his official capacity)**

44. Plaintiffs restate and reallege every paragraph set forth above as if fully incorporated herein.

45. Plaintiffs have contracts with their tenants which are executed and enforceable. The contracts at issue are residential leases between Plaintiffs and their tenants, which are governed by Minn. Stat. § 504B and common law.

46. Minn. Stat. § 504B.285 and § 504B.291 provide for eviction as a remedy for a breach of the contract. Breaches which might merit eviction under the statutes include, but are not limited to, holding over on real property, non-payment of rent, or other violations of contract terms. Both Minnesota statutes and common law also provide the mechanism for landlords to terminate or not to renew a tenant's contract. Notice of these rights and remedies are given in the contracts at issue.

47. Absent an order from the court under Minn. Stat. § 504B or the voluntary surrender of a rental unit by the tenant, landlords retain no right to re-enter and take possession of their properties.

48. Defendant Gov. Walz's EOs at issue here have effectively extinguished any remedy Plaintiffs have for breaches of contract by their tenants, and as a result, are a substantial impairment of Plaintiffs' contracts.

49. Such actions are unconstitutional under Article I, Section X, Clause 1 of the United States' Constitution.

50. By the actions stated above, Plaintiffs have been harmed in their ability to collect rent, enforce material terms of the contracts including terms intended to provide for the quality of life of other tenants, and in their ability to seek redress in the Courts.

**Count II:    Violations of Right to Trial Under the First Amendment**
**(Against Defendant Gov. Walz in his official capacity)**

51. Plaintiffs restate and reallege every paragraph set forth above as if fully incorporated herein.

52. The Minnesota Judicial system is empowered to hear cases and controversies including common-law claims for breach of contract and statutory claims under Minn. Stat. § 504B for eviction.

53. Except under certain, limited circumstances, the EOs prohibit Plaintiffs from filing an eviction action.

54. As complained of above, Plaintiffs have multiple tenants who have breached their contracts and/or who would otherwise be subject to termination or eviction under Minn. Stat. § 504B.

55. The EOs prohibit Plaintiffs from vindicating their rights under the First Amendment to a right to trial.

56. By the actions stated above, Plaintiffs have been harmed in their ability to collect rent, enforce material terms of the contracts, and in their ability to seek redress in the Courts.

**Count III:** <u>**Violations of The Takings Clause of the Fifth Amendment**</u>
**(Against Defendant Gov. Walz in official capacity)**

57. Plaintiffs restate and reallege every paragraph set forth above as if fully incorporated herein.

58. Under the Takings Clause of the Fifth Amendment, Plaintiffs have the right to just compensation for the taking of their private property for public use.

59. Under the EOs, Plaintiffs are required under threat of both civil and criminal sanctions to acquiesce to the physical presence of tenants in their properties, regardless of whether the tenant would otherwise have a right to remain in the property and regardless of the wishes of Plaintiffs to end the tenancy.

60. Because of the nature of the EOs at issue, the takings here involve the taking of distinct, investment-backed expectations in that Plaintiffs have each bought the properties which are subject to the takings complained of in the expectation of a return on their investment in the form of rental income.

61. Underlying its enactment, EO 20-14 and, by implication, its subsequent orders, invoked "emergency and disaster powers" "to 'protect the public peace, health, and safety.'" It went on to state that "[p]ublic health and safety are promoted by stabilizing households." However, these regulations are directed at a distinct subset of the population—rental property owners—who must alone bear the burden intended for the public good.

62. Plaintiffs have a fundamental property interest in the real properties they own, their contracts, and the business activities related to their rental businesses, which are protected by the Takings Clause of the Fifth Amendment.

63. By the actions stated above, Plaintiffs have been deprived of the economic and beneficial use and decision making related to their own property and investments, and have received no compensation for the taking.

**Count IV:** **Violations of Right to Due Process Under the Fifth and Fourteenth Amendments**
**(Against Defendant Gov. Walz in his official capacity)**

64. Plaintiffs restate and reallege every paragraph set forth above as if fully incorporated herein.

65. Plaintiffs have a fundamental property interest in the real properties they own, their contracts, and the business activities related to their rental businesses, which are protected by the Due Process Clause of the Fifth and Fourteenth Amendments.

66. Defendant Gov. Walz, by the enactment of the EOs at issue in this litigation, has unconstitutionally impaired Plaintiffs' fundamental interest in their real property and business activity.

67. Defendant Gov. Walz, by the enactment of the EOs at issue in this litigation, has impaired Plaintiffs' property interest in their real property and business activity in an arbitrary manner.

68. Defendant Gov. Walz, by the enactment of the EOs at issue in this litigation, has impaired Plaintiffs' property interest in their real property and business activity

without notice or the right to a hearing to challenge the impairment of these interests or seek compensation.

69. By the actions stated above, Plaintiffs have been harmed in their ability to collect rent, enforce material terms of the contracts including terms intended to provide for the quality of life of other tenants, and in their ability to seek redress in the Courts.

**Count V:** **Section 1983 Claims**
**(Against Defendants Gov. Walz and Gen. Ellison in their official and individual capacities)**

70. Plaintiffs restate and reallege every paragraph set forth above as if fully incorporated herein.

71. Defendants in their official capacities as public officials of the State of Minnesota, have taken the above actions complained of under color of state law.

72. As outlined above, these actions have deprived Plaintiffs of their rights under the First, Fifth, and Fourteenth Amendments, as well as under Article I, Sec. X of the United States Constitution.

73. As a result of the actions complained of above, Plaintiffs have suffered harm including but not limited to the loss of revenue, inability enforce the statutory and common-law covenants of quiet enjoyment, inability to ensure compliance with proper rules and regulations including applicable city, and state laws, inability to adequately address other breaches of contract, the loss of use and enjoyment of their property without compensation or due process, and the loss of their ability to seek redress in the courts.

**Count VI:** *Ultra Vires* **Acts**
**(Against Defendant Gov. Walz in his official and individual capacities)**

74. Plaintiffs restate and reallege every paragraph set forth above as if fully incorporated herein.

75. The authority for the EOs invoked by Defendant Gov. Walz is under Minn. Stat. § 12.21, which grants emergency powers to the governor under certain circumstances.

76. Nothing in the rulemaking provisions of Minn. Stat. § 12.21, or in any other authority under which the EOs may be executed, grants Defendant Gov. Walz the authority to wield the powers granted under the Minnesota Constitution to the Legislative or Judicial Branches.

77. Article 3, § 1 of the Minnesota Constitution provides that

> The powers of government shall be divided into three distinct departments: legislative, executive, and judicial. No person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others except in the instances expressly provided in this constitution.

78. Defendant Gov. Walz's actions in issuing the EOs are without any authority whatever, as they are an improper exercise of legislative power, including the power to modify or abridge statutes, which properly rests with the Legislature and has not been delegated.

79. Defendant Gov. Walz's actions in issuing the EOs are without any authority whatever, as they are an improper regulation of the judicial power inherent to the

Judiciary to exercise control over the operation of the Courts, including its ability to hear cases and controversies, which properly rests with the Judiciary and has not been delegated.

80. The EOs at issue improperly exercise both legislative and judicial power, as they add a notice provision entirely absent from Minn. Stat. § 504B, and they prevent the judiciary from hearing cases and controversies based on breaches of contract or statutory protections.

81. As a result of the actions complained of above, Plaintiffs have suffered harm including but not limited to the loss of revenue, inability enforce the statutory and common-law covenants of quiet enjoyment, inability to ensure compliance with proper rules and regulations including applicable city, and state laws, inability to adequately address other breaches of contract, the loss of use and enjoyment of their property without compensation or due process, and the loss of their ability to seek redress in the courts.

**Count VII:   Declaratory Relief and Injunctive Relief
              (Against all Defendants)**

82. Plaintiffs restate and reallege every paragraph set forth above as if fully incorporated herein.

83. Under 28 U.S.C. § 2201, Plaintiffs have the right to seek a declaration that the acts of Defendants, as complained of above, are taken in violation of the United States Constitution.

84. This case presents an actual case or controversy, as the actions complained of are not hypothetical, theoretical, or speculative, but currently act to impair Plaintiffs' rights and cause the damages complained of above, and adverse action against similarly-situated persons has already been undertaken by Defendants.

85. By the actions complained of above, Defendants have acted to impair Plaintiffs' rights under the United States Constitution.

86. Under 28 U.S.C. § 2202, 42 U.S.C. § 1988, and applicable case law, Defendants are entitled to an order enjoining the unconstitutional conduct complained of.

**Prayer for Relief**

Under the circumstances presented here, Plaintiffs will take the unusual step of not merely reciting the relief prayed for, but explaining the relief prayed for—and the relief *not* prayed for. Plaintiffs fully recognize the depths of the crisis facing the State, while also recognizing the hundreds of billions of dollars the state and federal governments have invested in ensuring that citizens are able to provide for necessities for themselves and their families, including for housing. If there were a cause of action granting Plaintiffs the ability to fashion their own remedy and require the State to both protect the housing interests of Minnesota citizens and the property interests of property owners and their tenants, this would surely be the relief prayed for. There is not. Wherefore, Plaintiffs pray an Order from this Court:

1. Declaring that the actions complained of by Defendants Gov. Walz and Gen. Ellison above are taken in violation of the Unites States Constitution;

2. Vacating Executive Orders 20-14, 20-73, and 20-79, or any subsequent Executive Orders which similarly violate the Constitution;

3. Permanently enjoining all Defendants from enforcing Executive Orders made in violation of the United States Constitution under 28 U.S.C. § 1343, including by bringing civil or criminal actions for violations of the Executive Orders at issue or any subsequent Executive Orders which similarly violate the Constitution;

4. Granting compensatory damages, and attorney's fees and other fees as permitted under 42 U.S.C. § 1988 and other applicable law; and

5. Granting such other relief as may be just and proper.

Dated:  September 24, 2020						HANSEN, DORDELL, BRADT, ODLAUG
										& BRADT, P.L.L.P.

										By: */s/  Michael Kemp*
										    Michael Kemp #390426
										Attorneys for Plaintiffs
										3900 Northwoods Drive, Suite 250
										St. Paul, MN 55112-6973
										mkemp@hansendordell.com