**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Heights Apartments, LLC, and Walnut Trails, LLLP, | Case No. 20-cv-2021 NEB-BRT |
| Plaintiffs, | |
| v. | **REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| Tim Walz, in his official capacity as Governor of the State of Minnesota, and Keith Ellison, in his official capacity as Attorney General of the State of Minnesota, and John Doe, | |
| Defendants. | |

**Introduction**

Through the first third of their brief addressing the factual basis of the situation before the Court, Defendants lay out a convincing argument that Minnesota is in the midst of a pandemic and that the government must do something to prevent its further spread. In their legal argument, however, Defendants do nothing to properly frame Defendants' interest or address whether the EOs at issue are the appropriate response, and little to address whether they are constitutional. Rather, as previewed by Plaintiffs in their principal brief, Defendants have merely argued that there is a Pandemic.

The question before the Court is not whether there is a Pandemic (there certainly is), nor even whether the government should take steps to protect its citizens in response

(it certainly should). The question before the Court is whether *this* action, as opposed to the myriad of steps Defendants could have taken, passes constitutional muster. It does not.

**Argument**

Defendants raise three arguments for why a preliminary injunction should not be granted in this matter. First, they argue that the Court lacks subject-matter jurisdiction on the basis that (1) the CDC Moratorium makes any relief moot, and (2) that the Governor and the Attorney General are not closely enough connected to the EOs they issued for this Court to grant the requested relief. (Def. Br., 8–12.) Next, they argue that Plaintiffs have no likelihood on the merits, claiming the EOs at issue do not infringe on Plaintiffs' constitutional rights. (*Id*. at 12–27.) Finally, they argue that none of the *Dataphase* factors support the injunction, claiming that Plaintiffs have suffered no irreparable harm while promising grave harm to Minnesota without these EOs. (*Id.* at 27–30.)

**I.　The Court Has Subject-Matter Jurisdiction Over Plaintiffs' Claims**

Defendants first argue that even if this Court should grant the relief sought, it would not grant any relief to Plaintiffs in light of the CDC moratorium. Additionally, they argue that Defendants are immune from suit regarding the EOs they signed and enforced. Neither claim has merit.

**A.  Plaintiffs Have Standing When They Seek Meaningful Relief**

Defendants' first argue "Plaintiffs lack standing to seek a preliminary injunction because the order that they seek is unlikely to remedy the injury of which they complain." (Def. Br., 9.) This is because "were the Court to enter such an order, the CDC moratorium would take effect, which would likely prevent Plaintiffs from evicting many of their tenants

2

(at least in cases of nonpayment)." (*Id.*) This argument badly misreads Plaintiffs' request, the CDC moratorium, and Defendants' own EOs.

The EOs at issue and the CDC moratorium are substantially different in ways which are critical and explicit in Plaintiffs' request for relief. Specifically, the CDC moratorium is substantially different in (1) who is a "covered person" subject to its protections, (2) the requirements necessary to invoke its protections, and (3) the ability of the courts to review whether eviction is appropriate under each order. *Compare Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19*, 85 Fed. Reg. 55292, 55293 ("CDC moratorium"); *with* the challenged EOs. Some of these differences are summarized below.

| Protections From Eviction Under CDC Moratorium vs. EOs at Issue | | |
|---|---|---|
| Factual Situation | CDC | MN EOs |
| Tenant who cannot pay full rent but makes good-faith efforts to make partial payments, seek assistance, and communicate with property owner | Yes | Yes |
| Tenant who violates building code, health ordinance, or other health and safety regulation, including occupancy limits | No | Yes |
| Tenant who harasses other tenants, interferes with management, or fails to follow other rules of tenancy unrelated to COVID-19 | No | Yes |
| Fully-employed, single tenant making $125,000/year who chooses not to pay rent | No | Yes |
| Tenant who cannot pay full rent and chooses not to seek government assistance | No | Yes |
| Tenant who cannot pay full rent and chooses not to make any partial payments or communicate with the property owner | No | Yes |
| Tenant who cannot make full payments but for whom other reasonable housing options are available | No | Yes |

Importantly, as noted above, one critical difference between the CDC moratorium and the EOs at issue is that the CDC's directive still allows the property owner to seek relief in the judicial branch; the EOs at issue do not. (*Compare* 85 Fed. Reg. at 55293

(defining "evict" as "remove or cause the removal of a covered person from a residential property"); *accord* Centers for Disease Control, *HHS/CDC Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, Frequently Asked Questions*, at 6 (available at https://www.cdc.gov/coronavirus/2019-ncov/downloads/eviction-moratoria-order-faqs.pdf, last accessed Oct. 18, 2020) ("This Order does not preclude a landlord from challenging the truthfulness of a tenant's declaration in any state or municipal court"); *with* EO 20–79, at 2 ("The ability of property owners, mortgage holders, or other persons entitled to recover residential premises to *file* an eviction action . . . is suspended") (emphasis added). In other words, while the CDC balances protections for tenants with protections for property owners and allows for a judge to determine whether eviction is appropriate, the EOs challenged here are violated the moment an eviction action is filed, allow for no review, and make no attempt to tie the protections to COVID-19. Defendants' assertion that the relief sought is moot because of the CDC moratorium is completely false.

### B. Defendants Are Not Immune From A Suit Contesting the Validity of the EOs They Executed and Enforce

Next, Defendants argue that even if the relief sought is not moot, this Court may not grant an injunction against Defendants Gov. Walz and Gen. Ellison because they are not connected to the enforcement of the EOs at issue against Plaintiffs. (Def. Br., 10.) Defendants demand a strange reading of the proper parties, where the governor who

enacted the EOs and attorney general who enforces them are not proper parties to a suit challenging the EOs.[1]

Defendant Gen. Ellison, who has brought suit to enforce the EOs, and Defendant Governor Walz, who signed each EO into effect, claim they are immune from suit challenging the EOs at issue. (Def. Br., 10.) Here, the Governor has enacted the first EO, 20-14, and continues himself to modify it. It would be a strange reading of immunity to state that the Governor is not a proper party to defend the EOs he himself has signed. Additionally, the EOs direct Attorney General enforcement against property owners and their attorneys, not only with criminal but also civil penalties. (EO 20-79, 3 ¶ 10.) The Supreme Court has held that "[p]ast enforcement against the same conduct is good evidence that the threat of enforcement is not 'chimerical.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014) (citing *Steffel v. Thompson*, 415 U.S. 452, 459 (1974).

Defendants rely on the claim that there is no allegation that "there is no risk of enforcement action" because "the Attorney General has [n]either threatened Plaintiffs with, or is about to commence, enforcement proceedings." (Def. Br., 11–12.) But Plaintiffs are

---

[1] The argument also raises the question of whether Defendants' argument is that the proper party to the suit is in fact John Doe, pseudonymously the hundreds of unascertainable city and county officials or private firms and individuals to whom the State has delegated its executive enforcement power, each need to be individually ascertained, named, and served (and individually answer? Individually defend?). Plaintiffs named John Doe in his official capacity precisely to avoid the administrative nightmare that would ensue.

5

not required to subject themselves to criminal or civil proceedings in order to have standing. *MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 128–29, (2007). Defendants are not immune from a suit challenging their EOs.

### II. Plaintiffs Have Met The Standard of Reasonable Likelihood of Success on the Merits of Their Claims

Next, Defendants advance the argument that even if the suit is not moot, Plaintiffs have no likelihood of success on the merits. (Def. Br., 12.) The thrust of their argument is that the EOs do not implicate any fundamental rights of Plaintiffs, and under *Jacobson*, the government is therefore free to infringe on those rights. This is not correct. Defendants' argument misreads *Jacobson*, which in its 115-year history until this year has never been cited for the proposition it is used for here. That subject, with the Court's permission, will is reviewed in detail in Plaintiffs' supplemental brief on that case and its analysis. But even under the *Jacobson* framework, Plaintiffs have demonstrated a reasonable likelihood of success on the merits.

#### A. Right to Petition

Defendants first argue that despite the fact that the courts have been shut to virtually all evictions for the last seven months, and that this moratorium will continue indefinitely, that Plaintiffs have not been denied a fundamental right to seek redress in the courts. (Def. Br., 17.) The Supreme Court has called this right "among the most precious of the liberties safeguarded by the Bill of Rights." *United Mine Workers v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967). Yet Defendants argue that the EOs are a minor, temporary inconvenience. (Def. Br., 17–18.)

6

Plaintiffs' fundamental right to seek redress in the Courts has and will continue to be violated for some time absent court order. Therefore, Plaintiffs have a reasonable likelihood of success on their Right to Petition claim.

### B. Contracts Clause Violations

Similarly, Defendants argue that there has been no violation of the Contracts Clause. (Def. Br., 19.) This argument is not correct under either case law or Minnesota statutes.

First, Defendants argue implicating the *Jacobson* framework that rights under the Contracts Clause are not fundamental. (Def. Br., 19.) Invoking their previous arguments Defendants argue here that in time of emergency, any argument that state action violates the Contracts Clause must begin with an analysis of whether the right is fundamental. If this were so (indeed, if their entire *Jacobson* argument were correct), the Supreme Court's leading Contracts Clauses case on recovery of property in time of national emergency should cite to *Jacobson* or at least analyze the "fundamental" right of the plaintiff at issue and whether "beyond all question" there was a "plain, palpable" invasion of that right. *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398 (1934) does neither. *See id.* at 440–442. For this reason, Plaintiffs have shown a likelihood of success on the merits of their Contracts Clause claim.

### C. Takings Clause Violations

Next, Defendants argue that Plaintiffs cannot seek an injunction because injunctive relief is not available for takings, and because no taking has occurred in this case. (Def. Br., 21–24.) At the outset, the cursory analysis that "injunctive relief is not available for a taking" depends on the idea that money damages are available. (*Id*. at 21.) Here, it is unclear

whether Defendants are conceding the question posed in Plaintiffs' principal brief: whether Defendants agree that they would be providing "just compensation" in the event the Court finds that a taking has occurred, or whether they are stating that the government may validly institute a taking when the "adequate provision for obtaining just compensation" is that the government has obligated third parties to compensate plaintiffs for the taking. (Pl. Br., 23–24) (citing *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2177 (2019)). Without a clear answer to this question, it is difficult to see how Defendants can reasonably assert that "adequate provision" has been made for compensation.

### D. Substantive Due Process Violations

Finally, Defendants argue that the substantive due process claim cannot stand merely as an "'amalgam' of constitutional violations." (Def. Br., 24.) Plaintiffs do not assert this claim merely as such. Rather, because substantive due process "is protection of the individual against arbitrary action of government" and is violated when the government interferes with rights "implicit in the concept of ordered liberty," the EOs here cannot be reduced down to their component violations and argued as separate and discrete infringements. (Pl. Br., 25) (citing *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); *Palko v. Connecticut*, 302 U.S. 319, 325–26 (1937) overruled on other grounds by *Benton v. Maryland*, 395 U.S. 784 (1969)). EOs which violate the First Amendment and the Fifth Amendment and the Contracts Clause must be show that they are narrowly tailored in light of *all* of the violations, not each of them.

The purpose of this argument is shown best by Defendants' responsive brief. As laid out above, Defendants argue that the infringement on the Petitions Clause is merely a

minor, temporary delay in a particular statutory (not constitutional) right, ignoring the constitutional violations of the Contracts Clause and the Fifth Amendment. They then argue that there has been no Contracts Clause violation because "landlord rights are still safeguarded" by their eventual right to bring claims, and therefore property owners will eventually be compensated. This is essentially an argument that there can be no Contracts Clause violation because Plaintiffs haven't, really, lost their Right to Petition. Finally, Defendants argue that there can be no Takings Clause violation if "an adequate provision for obtaining just compensation exists," ignoring the fact that the safeguards of that compensation, provided for by the Contracts Clause, and the ability to enforce them, provided for by the Petitions Clause, have both been extinguished by the EOs. But cutting down the EOs into their component violations and analyzing them piecemeal, Defendants attempt to justify each violation without ever addressing whether the EOs as a whole violate substantive due process by infringing on Plaintiffs' fundamental rights without as a whole being narrowly tailored to meet the government interest.

**Conclusion**

For the reasons set forth above, Plaintiffs' motion for a preliminary injunction should be granted.

Respectfully submitted,

Dated: October 23, 2020

HANSEN, DORDELL, BRADT, ODLAUG & BRADT, P.L.L.P.

*By: /s/ Michael Kemp*
Michael Kemp #390426
Attorneys for Plaintiff
3900 Northwoods Drive, Suite 250
St. Paul, MN 55112-6973
651/332-8734
mkemp@hansendordell.com