**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Heights Apartments, LLC, and Walnut Trails, LLLP, | Case No. 20-cv-2021 NEB-BRT |
| Plaintiffs, | |
| v. | |
| Tim Walz, in his official capacity as Governor of the State of Minnesota, and Keith Ellison, in his official capacity as Attorney General of the State of Minnesota, and John Doe, | **SUPPLEMENTAL MEMORANDUM OF LAW REGARDING *JACOBSON V. MASSACHUSETTS*** |
| Defendants. | |

### Introduction

Defendants make several references to Plaintiffs' failure to cite their preferred case on this issue, *Jacobson v. Massachusetts*, 197 U.S. 11 (1905). Rather than examine why the case is important to this analysis, however, Defendants simply cherry-pick a sentence from the opinion in support of their position. The case is worth a full analysis in light of the heavy emphasis Defendants (and many courts) place on it.

**I.  Factual Basis of Case and Holding**

*Jacobson* was a challenge to a Massachusetts statute allowing local governments to mandate vaccinations during the smallpox outbreak at the turn of that century, if they considered it necessary in their locality. 197 U.S. at 12. Jacobson, who had been criminally convicted for refusing and subjected to the $5 fine, challenged this law under the preamble

to the U.S. Constitution and the "spirit of the Constitution," as well as the Fourteenth Amendment. *Id.* at 13–14. Essentially, this challenge was the equivalent to similar challenges today to mask mandates: The question presented was one of individual liberty versus a legislative determination related to public health.

The Court in *Jacobson* analyzed the case as one of police powers, allowing that such power encompassed "such reasonable regulations established directly by legislative enactment as will protect the public health and the public safety." 197 U.S. at 25 (citing cases). The Court noted the tension between the role of the Legislature—"[t]he good and welfare of the commonwealth, of which the legislature is primarily the judge, is the basis on which the police power rests in Massachusetts," *id.* at 27—and the Judiciary—to protect against "police power" laws passed "in such an arbitrary, unreasonable manner, or might go so far beyond what was reasonably required for the safety of the public, as to authorize or compel the courts to interfere for the protection of such persons." *Id*. at 28 (citing cases when "under the guise of exerting a police power, [health laws] invaded the domain of Federal authority, and violated rights secured by the Constitution, [and] this court deemed it to be its duty to hold such laws invalid." *Id.*) It is in this context that the only quoted sentence of *Jacobson* in Defendants' brief appears.

> If there is any such power in the judiciary to review legislative action in respect of a matter affecting the general welfare, it can only be when that which the legislature has done comes within the rule that, if a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution.

*Id.* at 31 (citing *Mugler v. Kansas*, 123 U. S. 623, 661 (1887); *Minnesota v. Barber*, 136 U. S. 313, 320; *Atkin v. Kansas*, 191 U. S. 207, 223 (1903)). In each of the cited cases, just as in the cited passage above and the several pages of analysis preceding it, the Court was trying to avoid substituting its own judgment for that of the fully-formed factfinding of a legislature. *See Mugler* 123 U. S. at 661 ("Under our system that power is lodged with the legislative branch of the government"); *Barber*, 136 U. S. at 320 ("The rule is general, with reference to the enactments of all legislative bodies, that the courts cannot inquire into the motives of the legislators in passing them") (quoting *Soon Hing v. Crowley*, 113 U.S. 703, 710 (1885)); *Atkin*, 191 U. S. at 223 ("No evils arising from such legislation could be more far-reaching than those that might come to our system of government if the judiciary, abandoning the sphere assigned to it by the fundamental law, should enter the domain of legislation, and, upon grounds merely of justice or reason or wisdom, annul statutes that had received the sanction of the people's representatives.") Executive power was not mentioned; the Court's deference was to legislative fact-finding about medical issues.

**II.     Jacobson Was Often Cited, But Historically For The Simple Proposition That Individual Liberty Is Not Absolute**

Despite Defendants' assertions of the far-reaching scope of this new formulation of law, for well over a century *Jacobson* was often cited, but for the fairly unremarkable principle that individual liberty was not absolute, and the state possessed the police power to regulate the health of its citizens. *See*, e.g., *Roe v. Wade*, 410 U.S. 113, 154 (1973) ("The privacy right involved, therefore, cannot be said to be absolute. In fact, it is not clear to us that the claim asserted by some amici that one has an unlimited right to do with one's body

3

as one pleases bears a close relationship to the right of privacy previously articulated in the Court's decisions. The Court has refused to recognize an unlimited right of this kind in the past. *Jacobson v. Massachusetts*"); *Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833, 857 (1992) (cited for the same principle); *Washington v. Glucksberg*, 521 U.S. 702, 742 (1997) (citing *Jacobson* in examples recognizing "that this common-law right to refuse treatment is neither absolute nor always sufficiently weighty to overcome valid countervailing state interests"); *Wisconsin v. Yoder*, 406 U.S. 205, 230 (1972) (citing *Jacobson* as part of the argument that religious actions are "not totally free from legislative restrictions"); *Employment Div., Dept. of Human Res. of State of Or. v. Smith*, 485 U.S. 660, 670 n.13 (1988) (same). Indeed, the same Court which issued *Jacobson* issued *Lochner* two months later and noted that *Jacobson* was "related to compulsory vaccination, and the law was held valid as a proper exercise of the police powers with reference to the public health . . . . That case is also far from covering the one now before the court." *Lochner v. New York*, 198 U.S. 45, 56 (1905), abrogated in subsequent cases. "There is, in our judgment, no reasonable foundation for holding this to be necessary or appropriate as a health law to safeguard the public health, or the health of the individuals who are following the trade of a baker. The case differs widely, as we have already stated, from the expressions of this court in regard to laws of this nature." *Id*. at 58 (citing *Jacobson*). Even the Court which issued both opinions did not regard *Jacobson's* scope as broad enough to extend police powers from a doctor's office to a bakery.

When *Jacobson* has been cited by the high court in the context of emergency powers, the references have been spare, passing, or in dissent. *See*, e.g. *Hamdi v. Rumsfeld*,

542 U.S. 507, 592 (2004) (Thomas, J., dissenting) (citing *Jacobson* as part of the argument that the President's decision for indefinite detention of U.S. citizens as enemy combatants "is necessary to protect the public need not and should not be subjected to judicial second-guessing"). It was not cited, for instance, in *Blaisdell*, which invoked a national emergency to limit the rights of property owners to recover property by foreclosure. *See Home Bldg. & Loan Ass'n v. Blaisdell*, 209 U.S. 398 (1934).

> **III. In The Closest Analogous Case, *Jacobson* Was Cited Only To Show That A Governor's Executive Powers During An Emergency Should Be Limited Despite *Jacobson***

The closest the case has ever come to being used by the Supreme Court in an analogous case was in *Sterling v. Constantin*. In that case, the governor of Texas had declared a state of emergency due to civil unrest and issued executive orders to the Texas National Guard "regulating and restricting the production of oil from complainants' wells." 287 U.S. 378, 386–87 (1932). Naming the governor, adjutant general, and the brigadier general of the Texas National Guard as defendants, the plaintiffs (private companies whose wells were subject to interference by these executive orders) requested an injunction. *Id*. The Court quickly dismissed the defendants' arguments—also made in this case—that it lacked jurisdiction on Eleventh Amendment immunity grounds. *Id*. at 393. The Court then abstained on the argument—not made by Plaintiffs in this context—that Texas law did not grant the governor the emergency powers he claimed. *Id.* at 396. The Supreme Court then addressed the crux of the question presented by Defendants here, and unanimously and roundly rejected it at some length.

> Third. The existence and nature of the complainants' rights are not open to question. Their ownership of the oil properties is undisputed. Their right to the enjoyment and use of these properties, subject to reasonable regulation by the state in the exercise of its power to prevent unnecessary loss, destruction, and waste, is protected by the due process clause of the Fourteenth Amendment. [citing cases] . . . [A]ppellants assert that the court was powerless thus to intervene, and that the Governor's order had the quality of a supreme and unchallengeable edict, overriding all conflicting rights of property and unreviewable through the judicial power of the federal government.
>
> If this extreme position could be deemed to be well taken, it is manifest that the fiat of a state Governor, and not the Constitution of the United States, would be the supreme law of the land; that the restrictions of the Federal Constitution upon the exercise of state power would be but impotent phrases, the futility of which the state may at any time disclose by the simple process of transferring powers of legislation to the Governor to be exercised by him, beyond control, upon his assertion of necessity. Under our system of government, such a conclusion is obviously untenable. There is no such avenue of escape from the paramount authority of the Federal Constitution.

As the dagger in Defendants' position, the Court went on in the very next paragraph to note that its decision was taken in full recognition of the precedent of *Jacobson*. *Id.* at 398–99.[1]

---

[1] Unlike *Jacobson*, *Sterling* has been cited often by the majority or concurrence in cases involving executive authority in times of conflict. *See*, e.g., *Duncan v. Kahanamoku*, 327 U.S. 304, 335 (1946) (Stone, C.J., concurring) (despite the attack on Pearl Harbor, "the exercise of the [executive] power may not extend beyond what is required by the exigency which calls it forth"); *Cooper v. Aaron*, 358 U.S. 1, 18 (1958) (holding that a governor and school board could not "war against the Constitution" by resisting school integration);

## IV. Jacobson's New Life During The COVID-19 Pandemic

The Supreme Court has not had the occasion as yet to issue a final opinion on the COVID-19 pandemic as it relates to *Jacobson*'s new interpretation in the last six months, but has cited the case in three opinions concurring or dissenting from the denial of an application or stay of an injunction related to the pandemic. In only one of them was Defendants' position addressed directly. Justice Alito, writing for three justices who dissented from the denial of the application for an injunction against certain executive orders by the Governor of Nevada, cautioned that

> [l]anguage in *Jacobson* must be read in context, and it is important to keep in mind that *Jacobson* primarily involved a substantive due process challenge to a local ordinance requiring residents to be vaccinated for small pox. It is a considerable stretch to read the decision as establishing the test to be applied when statewide measures of indefinite duration are challenged under the First Amendment or other provisions not at issue in that case.

*Calvary Chapel Dayton Valley v. Sisolak*, 140 S. Ct. 2603, 2608 (2020) (Alito, J., dissenting).

---

*Hamdi v. Rumsfeld*, 542 U.S. 507, 535 (2004) (plurality opinion) (in the War on Terror, affirming right to impartial adjudicator of government's claim of enemy combatant status). *See also Toyosaburo Korematsu v. United States*, 140 F.2d 289, 297 (9th Cir. 1943), aff'd sub nom. *Korematsu v. United States*, 323 U.S. 214 (1944) (Denman, J, dissenting in part from internment of Japanese-Americans).

This is the correct analysis. For more than a century after it was issued *Jacobson* lived an uneventful life, standing for a principle so unremarkable that it was frequently mentioned and rarely examined. Now the effects of the recent emergency have breathed into it not new life, but a different life. It is no longer cited for the principle it was cited for in *Roe* and *Casey*, and *Glucksburg*, and *Yoder* and *Smith*: that a person's individual liberty is not absolute, but must bow to reasonable restrictions based on valid uses of police power. It no longer gives the gentler guidance it was read to hold in the years following its issuance. *See German All. Ins. Co. v. Hale*, 219 U.S. 307, 317 (1911) (citing Jacobson to hold that "the state may, in the exercise of its police power, *and in harmony with its own and the Federal Constitution*, prescribe for the public convenience and the general good") (emphasis added). It no longer is subject to the warnings in *Jacobson* itself, which the Eighth Circuit interpreted to mean that "[t]he reserved police power of the state must stop when it encroaches on the protection accorded the citizen by the Federal Constitution." *Women's Kansas City St. Andrew Soc. v. Kansas City, Mo.,* 58 F.2d 593, 598 (8th Cir. 1932) (citing *Jacobson* and similar cases). Instead, a flood of cases during the pandemic have given it exactly the inverse reading and a scope that is almost boundless.

As of October 19, 2020, of the 453 times *Jacobson* has been cited by the federal courts, 154 have come since the start of the pandemic; that is, over one-third of all federal citations to *Jacobson* over the previous one hundred and fifteen years have come in the last six months. Twenty of the citations came between the filing of Plaintiffs' initial memorandum and Defendants' response. Now, some courts are interpreting *Jacobson* to hold that "[d]uring an epidemic, the *Jacobson* court explained, the traditional tiers of

constitutional scrutiny do not apply."[2] *Cassell v. Snyders*, 20 C 50153, 2020 WL 2112374, at *6 (N.D. Ill. May 3, 2020), *on appeal* to Seventh Circuit (cited in Def. Br., 13). This Court, following the Fifth Circuit, has taken the position that "*Jacobson* instructs that *all* constitutional rights may be reasonably restricted to combat a public health emergency." *Lewis v. Walz*, CV 20-1212 (DWF/HB), 2020 WL 5820549, at *4 (D. Minn. Sept. 30, 2020) (quoting *In re Abbott*, 954 F.3d 772, 786 (5th Cir. 2020)) (emphasis in original). The Eighth Circuit in *In re Rutledge* held that in the face of a crisis, *Jacobson* imposes a higher standard than any known to law: that only "fundamental" rights are subject to protection from abuse of police powers, and even then only on a showing "*beyond all question*" that there is a "plain, palpable" invasion of that right, or a showing that the state lacks a "real and substantial relation" to the crisis. 956 F.3d 1018, 1028 (8th Cir. 2020) (emphasis added).

As this Court has noted, other district courts have not taken such a sweeping view of *Jacobson.* 2020 WL 5820549 at *4, n.5 (citing *Cnty. of Butler v. Wolf*, —F.3d—, Civ. No. 20-677, 2020 WL 5510690, at *9-10 (W.D. Penn. Sept. 14, 2020)); *see also Bayley's Campground, Inc. v. Mills,* — F. Supp. 3d —, 2020 WL 2791797 (D. Me. May 29, 2020). The sudden onslaught in the last few months of this new interpretation of *Jacobson* as a sweeping emergency-powers decision should show the Court that this is an example of an analysis seeking a precedent, rather than precedent driving analysis.

---

[2] This argument ignores the fact that, in 1905, even the idea of "tiers" of constitutional scrutiny would not exist for another 33 years. *United States v. Carolene Products Co.*, 304 U.S. 144, 152 n.4 (1938).

# Conclusion

For the reasons set forth above, until this year *Jacobson v. Massachusetts* has been consistently used for the narrow holding individual liberty is not absolute in the face of valid police powers of the state to regulate the health of its citizens. Its new formulation as a case standing for the proposition that during an emergency, *all* civil rights are subject to encroachment is a wholly new and incorrect reading of the case. Despite a single, ill-used line, *Jacobson* is not applicable to this case.

Respectfully submitted,

Dated: October 23, 2020

HANSEN, DORDELL, BRADT, ODLAUG
& BRADT, P.L.L.P.

By: */s/ Michael Kemp*
   Michael Kemp #390426
Attorneys for Plaintiff
3900 Northwoods Drive, Suite 250
St. Paul, MN 55112-6973
651/332-8734
mkemp@hansendordell.com