UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| Heights Apartments, LLC, and Walnut Trails, LLLP, | Court File No. 20-CV-02051 (NEB/BRT) |
| Plaintiffs, | |
| v. | **DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS** |
| Tim Walz, in his individual and his official capacity as Governor of the State of Minnesota, and Keith Ellison, in his individual and his official capacity as Attorney General of the State of Minnesota, and John Doe, | |
| Defendants. | |

## INTRODUCTION

The Eighth Circuit Court of Appeals reversed this Court's dismissal of Plaintiff Heights Apartments' ("Heights") claims and remanded the case to this Court for further proceedings. Heights' remaining claims, however, are not viable as a matter of law because Defendants are immune from claims for money damages under the Eleventh Amendment and the doctrine of qualified immunity. Aside from immunity, recent case law has also made clear that there is no individual liability under either the Takings Clause or the Contracts Clause and that there is no cause of action under Section §1983 for violations of the Contracts Clause. Accordingly, because these deficiencies are clear on the face of the pleadings and do not require additional discovery to prove or disprove,

judgment on the pleadings is appropriate.  The Court should grant Defendants' motion and dismiss Heights' remaining claims in their entirety and with prejudice.

## FACTS

### I.    THE STATE OF MINNESOTA RESPONDS TO AN UNPRECEDENTED PUBLIC HEALTH CRISIS.

It is undisputed that COVID-19, the infectious disease caused by a newly-discovered coronavirus, has created a public health crisis and has caused adverse impacts on many, if not all, Minnesotans.  (*See* Compl. ¶ 1, Doc. 1.)  In response to the COVID-19 public health crisis, Governor Walz issued a peacetime emergency declaration on March 13, 2020.  (Compl. ¶ 8.) *See also* Emergency Executive Order ("Emergency EO" or "EO") 20-01.[1]  Minnesota engaged in a comprehensive plan to combat COVID-19 aimed at slowing the spread of the disease, protecting the capacity of the State's medical system to respond to the disease, and ensuring the continued operation of critical sectors to protect the public's access to necessary services and supplies.  *See*, *e.g.*, Emergency EOs 20-02 through 20-63, 20-66, 20-70, 20-73 through 20-76, 20-78 through 20-86, 20-89, 20-92, 20-94 through 20-107, 21-01 through 21-04, 21-07, 21-11, 21-12, 21-15, 21-16, 21-17, 21-19, 21-21, 21-22, 21-23, and 21-24. (*See also* Compl. ¶ 9, Doc. 1.)

Both the pandemic and the continuing government response are events without precedent in at least the last century and perhaps in recorded history.  Indeed, Heights says in its Complaint that it "fully recognize[s] the depths of the crisis facing the State,

---

[1] All of Minnesota's Emergency Executive Orders regarding COVID-19 are available online at https://www.leg.state.mn.us/lrl/execorders/eoresults?gov=44  [PERMA:  https://perma.cc/EV34-32NG].

while also recognizing the hundreds of billions of dollars the state and federal governments have invested in ensuring that citizens are able to provide for necessities for themselves and their families, including for housing."   (Compl. Prayer for Relief, Doc. 1.)

## II.  GOVERNOR WALZ TEMPORARILY LIMITS EVICTIONS TO LIMIT SPREAD OF VIRUS.

Like the federal government and many state and local governments, Minnesota temporarily limited the ability of residential property owners to evict tenants.  *See, e.g., Temporary Halt in Residential Evictions To Prevent the Further Spread of COVID-19*, 85 Fed. Reg. 55292, 55292-95 (Sept. 4, 2020).  On March 23, 2020, Governor Walz issued Emergency EO 20-14.   (Compl. ¶ 13, Compl. Exhs. 1-3, Doc. 1.)   Recognizing the economic consequences of the pandemic as well as the connection between housing stability and control of community spread of the virus, EO 20-14 temporarily limited the circumstances in which property owners could terminate residential leases or use the statutory eviction procedure.  (Compl. Exh. 1.)  Noting similar measures by the federal government and at least two dozen other states, the Governor stated:

> [p]ublic health and safety are promoted by stabilizing households which, through no fault of their own, may suddenly have the inability to afford rent.  Providing a temporary moratorium on eviction actions allows these households to remain stably housed as they safeguard the health of themselves, their families, and other Minnesotans.

(EO 20-14 at 2, Compl. Exh. 1.)  EO 20-14 excepted eviction cases in which the tenant "seriously endangered the safety of other residents" and for violations of Minnesota Statutes § 504B.171, subd. 1, which provides that a tenant loses the right to possession of

the property by engaging in illegal activity related to drugs, firearms, prostitution, or stolen goods on the property. *Id*. EO 20-14 specifically provided that it did not affect a tenant's continuing obligation to pay rent. *Id*. On June 5, 2020, the Governor issued Emergency EO 20-73 to clarify the application of EO 20-14 "to situations where a tenant seriously endangers the safety of others who are not residents." (Compl. Exh. 2 at 1, Doc. 1.)

On July 14, 2020, Governor Walz issued Emergency EO 20-79, which rescinded EO 20-14 and EO 20-73 and took effect on August 4, 2020. (Compl. Exh. 3.) EO 20-79 created additional exceptions to the eviction moratorium, including an exception for when a tenant violates a lease by "significantly damag[ing] the property." (*Id*.). EO 20-14, 20-73, and 20-79 are collectively referred to herein as the "Orders." *See also* Compl. ¶ 23 (Referring to the Orders collectively).[2]

In June 2021, Governor Walz and the Legislature agreed to a phaseout of these emergency eviction restrictions. Briana Bierschbach and Stephen Montemayor, *Minnesota legislators reach deal on eviction moratorium*, Star Tribune (June 14, 2021). *See* Act of June 29, 2021, ch. 8, art. 5, §§ 1-4, 2021 Minn. Laws 1st Spec. Sess. In addition, when Governor Walz and the Legislature reached an agreement on separate legislation that terminated Governor Walz's COVID-19 peacetime emergency

---

[2] One researcher estimated that that the Orders saved 2,040 lives and prevented 111,000 COVID-19 infections through January 4, 2021. Larry McDonough, Pandemic Eviction Claims and Defenses and Other Housing Claims in Minnesota, p. 28 (updated and revised February 2022) (available at https://povertylaw.homestead.com/files/Reading/Pandemic_Eviction_Claims_and_Defenses_and_Other_Housing_Claims_in_Minnesota.pdf (last visited Sept. 2, 2022) (PERMA: https://perma.cc/9AST-QD33).

declaration, effective July 1, 2021, the Orders became null and void.  *See* Act of June 30, 2021, ch. 12, art. 2, § 23, 2021 Minn. Laws 1st Spec. Sess.  Meanwhile, the State made hundreds of millions of dollars in rental assistance available to Minnesota tenants and landlords.  *See RentHelpMN Dashboard*, Minnesota Housing Finance Agency, https://www.mnhousing.gov/renthelpmn-dashboard (Last visited September 2, 2022) [Perma: https://perma.cc/KQ8M-5GZA].

III.    **THE EIGHTH CIRCUIT REMANDS HEIGHTS' CLAIMS FOR MONEY DAMAGES UNDER THE TAKINGS AND CONTRACTS CLAUSES.**

Heights and another landlord sued Governor Walz and Attorney General Ellison in September 2020, seeking to enjoin the Orders and to recover money damages for alleged harm. (Compl., Doc. 1.)  Heights pleaded substantive claims under the Petition Clause of the First Amendment, the Contracts Clause, the Takings Clause, and the Due Process Clause of the Fourteenth Amendment, as well as separate counts for allegedly "ultra vires acts" under state law, for violations of 42 U.S.C. § 1983, and for declaratory judgment. (Compl. Doc. 1.)  The district court dismissed all of the claims and denied the Landlords' request for an injunction as moot.  (Doc. 37.)

Heights appealed without the other landlord.  (Doc. 40.)  The Eighth Circuit affirmed in part and reversed in part.  First, the court dismissed as moot Heights' claims for declaratory and injunctive relief because the EOs had been voided by legislation signed into law by the Governor.  *Heights Apartments, LLC v. Walz*, 30 F.4th 720, 726 (8th Cir. 2022).  The court also affirmed the dismissal of Heights' claims under the Petition Clause and the Due Process Clause.  *Id*. at 732, 735-36.  As to Heights' Contracts

5

Clause claim, the court assumed without deciding that there is a § 1983 cause of action for a Contracts Clause claim. *Id*. at 728. The Court then went on to hold that Heights pleaded a plausible Contracts Clause claim, becoming the first federal court in the country to allow such a claim to proceed. *Id*. at 731-32. The Court also held that Heights had pleaded viable claims for physical and regulatory takings, relying on U.S. Supreme Court case law issued after the Orders were set to expire. *Id*. at 734-35.

The Eighth Circuit later denied Defendants' petition for rehearing en banc, with four of the court's 11 active judges voting to grant the petition. *Heights Apartments, LLC v. Walz*, 39 F.4th 479 (8th Cir. 2022). Dissenting from the denial of rehearing, Judge Colloton criticized the panel decision for misreading Supreme Court precedent and for being "an outlier among federal courts." *Id*. at 481 (8th Cir. 2022) (Colloton, J., dissenting). On the same day that Defendants' petition for rehearing en banc was denied, the Eighth Circuit decided *Glow In One Mini Golf, LLC v. Walz*, determining that the Governor was entitled to qualified immunity on the takings claim of several businesses that were subject to emergency executive orders. 37 F.4th 1365, 1373 (8th Cir. 2022). Defendants now bring this motion for judgment on the pleadings to terminate Heights' remaining claims.

## ARGUMENT

### I.   RULE 12(C) AUTHORIZES DISMISSAL OF CLAIMS THAT ARE NOT VIABLE AS A MATTER OF LAW.

On a motion for judgment on the pleadings, the Court should "accept the plaintiff's factual allegations as true and construe all reasonable inferences in favor of the plaintiff."

*Saterdalen v. Spencer*, 725 F.3d 838, 841 (8th Cir. 2013) (affirming judgment on the pleadings based on qualified immunity).  "While courts generally may not consider materials outside the pleadings in deciding whether to grant a motion for judgment on the pleadings, courts may consider some public records, materials that do not contradict the complaint, or materials that are necessarily embraced by the pleadings."  *Id.* (internal quotations omitted).  The Court "do[es] not accept legal conclusions phrased as fact allegations."  *Buckley v. Hennepin Cnty.*, 9 F.4th 757, 760 (8th Cir. 2021) (affirming judgment on the pleadings based on qualified immunity).

Judgment on the pleadings is appropriate here because neither of Heights' two remaining substantive claims[3] -- § 1983 damages claims for alleged violations of the Contracts Clause and Takings Clause -- are viable as a matter of law, and no amount of discovery will change the outcome.  First, the only relief available on remand under the remaining claims is money damages, but Heights may not recover damages.  Heights' damages claims against Defendants in their official capacities are barred by the Eleventh Amendment, and the damages claims against Defendants in their individual capacities are barred by qualified immunity.  Second, Heights' takings claim also fails for the independent reason that Heights has the wrong Defendants; neither Defendant can be individually liable for an allegedly unconstitutional taking or Contracts Clause violation.  Finally, the Contracts Clause claim fails because § 1983 does not provide a remedy for an

---

[3] Count V of Heights' Complaint is styled as "Section 1983 Claims" against both Defendant Walz and Defendant Ellison that purports to incorporate Heights' Contracts Clause (Count I) and Takings Clause (Count III).

alleged Contracts Clause violation. Accordingly, because none of Heights' remaining claims is viable, judgement on the pleadings is appropriate.

## II.    HEIGHTS' CLAIMS AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITIES ARE BARRED BY THE ELEVENTH AMENDMENT.

The Eleventh Amendment bars claims seeking damages from State officials sued in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Hummel v. Minnesota Dep't of Agric.*, 430 F. Supp. 3d 581, 587 (D. Minn. 2020). "[D]efendants cannot be sued for money damages under § 1983 because claims against state officials in their official capacities are really suits against the state and a state is not a person for purposes of a claim for money damages under § 1983." *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016). *See also Treleven v. Univ. of Minnesota*, 73 F.3d 816, 818 (8th Cir. 1996) (holding that Eleventh Amendment barred official capacity claims for money damages against University of Minnesota officials).

The Complaint seeks compensatory relief from Defendants in both their official and individual capacities. (Compl. Counts I, III, V, Docket 1.) In particular, Count V of Heights' Complaint incorporates Heights' Contracts Clause and Takings claims and seeks damages against Defendants in their official capacities. (Compl. ¶¶ 70-73, and Prayer for Relief.) These claims are barred by the Eleventh Amendment. *See Montgomery v. City of Ames*, 829 F.3d 968, 973 (8th Cir. 2016) ("[T]he State and its agencies are immune from suits for damages."); *Gibson v. Ark. Dep't of Corr.*, 265 F.3d 718, 720 (8th Cir. 2001). Because money damages are not available against Defendants in their official

capacities, judgment on the pleadings is appropriate for Heights' official capacity claims.[4]  *See Skatemore, Inc. v. Whitmer*, 40 F.4th 727 (6th Cir. 2022) (holding Eleventh Amendment barred takings claim against state governor in her official capacity).

**III.    DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE THE ALLEGATIONS IN THE COMPLAINT DO NOT SHOW A VIOLATION OF CLEARLY ESTABLISHED LAW.**

As Defendants pleaded in their Answer, they are entitled to qualified immunity for all of the actions alleged in the Complaint.  (Doc. 53.)  Heights' Complaint faults the Governor's choice to temporarily limit Heights' ability to evict the tenants of four of its 17 apartment units, while acknowledging the gravity of the public health crisis facing public officials.  (Compl. at ¶¶ 25-34; Doc. 1.)  In prior briefing, Heights even suggested that the Governor could limit evictions in a similar manner to limitations imposed by the federal government, but criticized the Governor's alleged failure to tailor the Orders to the economic consequences of the pandemic.  (Plaintiff's Memorandum in Opposition to Motion to Dismiss (Doc. 28) ("Pl. Mem.") pp. 1-2, 22-23.)  Defendants' actions, however, were undisputedly discretionary, and as such are protected by qualified immunity unless they violated clearly established law.

Qualified immunity protects discretionary actions taken by public officials unless those officials violate clearly established law.  Whether the law is clearly established is a legal issue for the Court to decide and can be decided at this stage if Defendants' entitlement to judgment is clear from the face of the pleadings.  The doctrine applies here

---

[4] Heights' claims for declaratory and injunctive relief have already been dismissed, leaving only the claims for money damages.  *Heights*, 30 F.4th at 726.

because, as the Eighth Circuit decided in *Glow in One*, there is no legal authority that would have put a reasonable official in Defendants' position on notice that their conduct violated clearly established law.

### A.    Heights Must Show That Every Reasonable Official In The Position Of Defendants Would Have Known The EOs Violated The Constitution.

The U.S. Supreme Court has long recognized that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This doctrine, qualified immunity, applies "when an officer reasonably believes that his or her conduct complies with the law." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009). The Court asks whether (1) the plaintiff has shown the violation of a constitutional right, and (2) if so, whether the right at issue was "clearly established" at the time of the incident, such that a reasonable official would have known his conduct was unlawful. *Id*. at 232. Courts reviewing a qualified immunity defense may exercise their "sound discretion" as to which of the two prongs of the analysis to address first.[5] *Id*.

_____

[5] Heights' claims fail both prongs of the qualified immunity analysis for both the Contracts Clause and the Takings Clause claims. Although the Eighth Circuit panel's determination that allegations in the Complaint are sufficient to plead a claim for violation of the Contracts and Takings Clauses is binding on this Court, the Court did not address whether the contours of the right were clearly established at any time that the orders were in effect. Accordingly, this motion focuses on the clearly established prong of the analysis, which is a different question. *See Glow In One Mini Golf, LLC v. Walz*, 37 F.4th 1365, 1374 (8th Cir. 2022) (declining to decide whether a taking occurred because the law was not clearly established "such that Governor Walz would have understood that his EOs constituted a taking."). Defendants reserve the right to litigate
(Footnote Continued on Next Page)

at 236.  *See also Glow In One Mini Golf, LLC v. Walz*, 37 F.4th 1365, 1373 (8th Cir. 2022) (resolving qualified immunity in favor of Governor Walz because contours of takings claim were not clearly established).

The issue of whether a right is clearly established is a legal one that does not require discovery.  *Kulkay v. Roy*, 847 F.3d 637, 646 (8th Cir. 2017) (dismissing § 1983 claims on qualified immunity grounds and rejecting argument that district court should have allowed discovery);  *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1012 n 4 (8th Cir. 2017);  *Kruger v. Nebraska*, 820 F.3d 295, 302 (8th Cir. 2016) (explaining that court was not required to accept as true assertion that constitutional right was clearly established).  *See also First Com. Tr. Co. v. Colt's Mfg.*, 77 F.3d 1081, 1083 n.4 (8th Cir. 1996) (explaining that without a "plausible legal theory," plaintiffs have "no right to discovery.").  To show the violation of a clearly established right so as to overcome qualified immunity, a plaintiff must show "that *every* reasonable official would [have understood] that what he is doing violates that right."  *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (emphasis added) (internal quotations omitted).  "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken."  *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (internal quotations omitted).  The

_____
(Footnote Continued from Previous Page)
these substantive constitutional issues in further proceedings before this Court or on appeal.

Court must view the law as it existed when the challenged decisions were made because public officials cannot be "expected to predict the future course of constitutional law." *Wilson v. Layne*, 526 U.S. 603, 605 (1999).

Authority cited to overcome qualified immunity must also present "similar circumstances." *White v. Pauly*, 137 S. Ct. 548, 552 (2017). The Supreme Court has "repeatedly told courts not to define clearly established law at too high a level of generality." *City of Tahlequah, Oklahoma v. Bond*, 142 S. Ct. 9, 11 (2021) (per curiam) (reversing because circuit court did not identify "a single precedent finding a Fourth Amendment violation under similar circumstances."); *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 9 (2021) (per curiam) (reversing denial of qualified immunity because circuit court failed to identify case law that was "sufficiently similar" to situation faced by officers). "It is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *City of Tahlequah*, 142 S. Ct. at 11 (2021) (internal quotations and citations omitted). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Wesby*, 138 S. Ct. at 589 (internal quotation marks and citation omitted).

Applying this framework to Heights's § 1983 claims for alleged violations of the Contracts Clause and Takings Clause, it is clear that judgment on the pleadings is appropriate. There was no case law establishing that the Orders were obviously unconstitutional at any time they were in effect, an indisputable fact bolstered by the dozens of federal, state, and local measures that limited evictions. To the contrary, at the

time that the Governor issued the Orders and until the Eighth Circuit issued its opinion in this case, the relevant case law supported the Orders' constitutionality. Because the clearly established prong of qualified immunity focuses on the objective legal reasonableness of Defendants' actions, no further development of the record is necessary and the court should dismiss the claims with prejudice.

**B.    Defendants Are Entitled To Qualified Immunity On Heights' Takings Claim.**

Heights' takings claim should be dismissed because it does not allege a violation of clearly established law. Recent Eighth Circuit case law – as well as decisions from other federal courts in dismissing similar claims – forecloses any such showing.

The Eighth Circuit Court of Appeals recently found that Governor Walz was entitled to qualified immunity on a takings claim brought by several businesses who were allegedly "forced to close completely" because of the Governor's emergency executive orders. *Glow In One Mini Golf, LLC v. Walz*, 37 F.4th 1365, 1375 (8th Cir. 2022), *petition for rehearing denied*, August 9, 2022. In *Glow In One*, a group of businesses claimed that Governor Walz's executive orders resulted in complete closure of their businesses, one of them permanently. 37 F.4th at 1374. Nonetheless, the court affirmed dismissal of their takings claims, rejecting the argument that the Takings Clause itself was sufficient notice that just compensation was owed under the circumstances. *Id*. The court found that the Governor could not have known that "his EOs, issued in response to an unprecedented pandemic, constituted a taking for which just compensation was owed." *Id*.

13

*Glow in One* controls this Court's analysis and requires judgment on the pleadings on Heights' takings claim. Heights has never pointed to controlling case law that established the Orders as a constitutional taking, and such case law did not exist until the Eighth Circuit reversed this Court's dismissal in April 2022, almost a year after the Orders were rescinded. As Judge Colloton pointed out in dissenting from the denial of rehearing en banc, the panel decision "misreads the most analogous decision of the Supreme Court on the matter of per se takings" and its "analysis of regulatory takings runs counter to governing precedent and the decisions of other federal courts during the pandemic." *Heights Apartments, LLC v. Walz*, 39 F.4th 479, 480 (8th Cir. 2022).

Indeed, every federal court that has examined takings claims against state eviction restrictions has concluded that such restrictions were not constitutional takings. *E.g., Elmsford Apartment Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148, 162-67 (S.D.N.Y. 2020); *Baptiste v. Kennealy*, 490 F. Supp. 3d 353, 387-90 (D. Mass. 2020); *Auracle Homes, LLC v. Lamont*, 478 F. Supp. 3d 199, 220-23 (D. Conn. 2020); *Jevons v. Inslee*, 561 F. Supp. 3d 1082, 1105–1108 (E.D. Wash. 2021); *Gallo v. D.C.*, No. 1:21-CV-03298 (TNM), 2022 WL 2208934, at *8-10 (D.D.C. June 21, 2022). Courts have reached similar conclusions with regard to other emergency business regulations to combat the pandemic. *Skatemore, Inc. v. Whitmer*, 40 F.4th 727 (6th Cir. 2022) (collecting cases and affirming dismissal of takings claim based on qualified immunity).

Moreover, in remanding Heights' remaining claims to this Court, the Eighth Circuit relied primarily on U.S. Supreme Court decisions from June and August of 2021 to find that the takings claims were sufficiently pleaded. 30 F.4th at 733-736 (relying on

*Cedar Point Nursery* and *Ala. Assn. of Realtors*).  By the time the first of those decisions, *Cedar Point Nursery*, was issued on June 23, 2021, the Governor and the Minnesota Legislature had announced an agreement to phase out the Orders.  Briana Bierschbach and Stephen Montemayor, *Minnesota legislators reach deal on eviction moratorium*, Star Tribune (June 14, 2021).  Even if these cases could clearly establish the law as it relates to Orders, neither was available to the Defendants at the time the Orders were in effect. *See Wilson*, 526 U.S. at 605 (holding that officials were entitled to qualified immunity and are not required to predict the future course of constitutional law).

Finally, the federal government and at least two dozen other states issued temporary eviction moratoria in response to the COVID-19 pandemic.  *See Heights Apartments, LLC v. Walz*, 39 F.4th at 480 (Colloton, J. dissenting from denial of rehearing en banc) (noting widespread use of eviction moratoria in response to pandemic).  Until the Eighth Circuit issued its decision in this case, no federal court in the country had found such a measure to be a taking.  Thus, there was far from a "robust consensus of cases of persuasive authority" that the Orders were a constitutional taking, and significant authority that they were not.  *Wesby*, 138 S. Ct. at 589 (requiring a "robust consensus" of case law to clearly establish the law).   As Judge Colloton's dissent highlights, there was not even a consensus among judges in the Eighth Circuit about the constitutionality of the Orders.  Because takings liability for the Orders was not clearly established at any time that the Orders were in effect, Defendants are entitled to qualified immunity on Heights' takings claim.

**C.    Defendants Are Entitled To Qualified Immunity On Heights'
Contracts Clause Claim.**

Qualified immunity applies with equal force to Heights' claims under the
Contracts Clause.  As Judge Colloton wrote in dissenting from the denial of Defendants'
petition for rehearing en banc, "the panel decision on the Contracts Clause is an outlier
among federal courts: it conflicts with a recent decision of the Ninth Circuit and decisions
of every federal district court to consider the issue."  *Heights Apartments, LLC v. Walz*,
39 F.4th 479, 481 (8th Cir. 2022) (Colloton, J., dissenting from denial of rehearing en
banc).  Judge Colloton was referring to *Apartment Ass'n of L.A. Cnty. v. City of L.A.*, in
which the Ninth Circuit affirmed the denial of a preliminary injunction of similar eviction
restrictions, recognizing that housing instabilities "exacerbate the public health-related
problems stemming from the COVID-19 pandemic."  10 F.4th 905, 914-917 (9th Cir.
2021), cert. denied, -- S. Ct. --, 2022 WL 1131544 (Mem).  The Ninth Circuit joined
every federal district court in determining that eviction moratoria, like the Orders, do not
violate the Contracts Clause.  *See Baptiste*, 490 F. Supp. 3d at 386-387; *HAPCO v. City
of Philadephia,* 482 F. Supp. 3d 337, 354-55 (E.D. Pa. 2020); *Auracle Homes*, 478 F.
Supp. 3d at 225-226; *Elmsford Apartment Assocs*, 469 F. Supp. 3d at 171-172; *Gallo*,
2022 WL 2208934, at *6; *Jevons*, 561 F. Supp. 3d at 1101.

This broad consensus is unsurprising in light of the historical context and purpose
of the Contracts Clause.  The Contracts Clause was originally intended to reassure
Revolutionary War creditors that war debts would not be extinguished through
legislation.  *Sveen*, 138 S. Ct. at 1821.  The Clause has never been understood, however,

to prevent states "from regulating health, safety, and morals," as the Governor did with the Orders. *Ass'n of Equip. Manufacturers v. Burgum,* 932 F.3d 727, 732 (8th Cir. 2019). Indeed, courts routinely have deferred to States in the exercise of police power in rejecting Contracts Clause challenges. *Energy Rsrvs. Grp., Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 410 (1983); *Hawkeye Commodity Promotions, Inc. v. Vilsack,* 486 F.3d 430, 439 (8th Cir. 2007).

Moreover, even the Eighth Circuit panel that remanded this case acknowledged that it was breaking with another circuit in determining that a similar eviction moratorium would violate the Contracts Clause. *Heights Apartments*, 30 F.4th at 729 n. 8 (explaining that it did not find *Apartments Association* persuasive). "When the courts are divided on an issue so central to the cause of action alleged, a reasonable official lacks the notice required before imposing liability." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1868 (2017).

Given the agreement among federal courts that pandemic related restrictions *did not* violate the Contracts Clause, it would not have been clear to reasonable officials in Defendants' positions "that [their] conduct was unlawful in the situation [they] confronted." *City of Tahlequah*, 142 S. Ct. at 11 (2021). At the time the Orders were issued, Governor Walz was responding to "an unprecedented pandemic" with similar measures to those employed by the federal government and dozens of other states and municipalities. *Glow In One*, 37 F.4th at 1375. *See also In re Rutledge*, 956 F.3d 1018, 1023 (8th Cir. 2020) (recognizing that COVID-19 was an "unprecedented health crisis"). Because the Orders did not violate any clearly established Contracts Clause

jurisprudence, the Defendants must be afforded qualified immunity and judgment on the pleadings is appropriate.

**IV. HEIGHTS' CLAIMS AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES FAIL BECAUSE BOTH THE TAKINGS CLAUSE AND THE CONTRACTS CLAUSE DO NOT CREATE INDIVIDUAL LIABILITY.**

Heights' claims against Defendants in their individual capacities fails for yet another independent reason: neither constitutional provision provides for individual liability.[6] The Eighth Circuit recently held that an individual-capacity takings claim arising out of Governor Walz's emergency executive orders could not survive dismissal because the Takings Clause does not provide for individual liability. *Glow In One*, 37 F.4th at 1375. "Supreme Court cases only contemplate government entities—not individual government officials—providing just compensation." *Id.* As discussed above, Defendants are immune from Heights' takings claim in their official capacities, leaving only the individual capacity claims. But as the *Glow In One* court recognized, the Takings Clause applies to governments, not to individual government actors. As such, Heights' claims against Defendants in their individual capacities fails as a matter of law and should be dismissed.

---

[6] Heights' Complaint alleges no facts at all with respect to unconstitutional actions taken by Attorney General Ellison himself. Heights alleges only that Attorney General Ellison is a member of the Executive Council, that he had authority to enforce the Orders, and did so on a number of occasions with respect to other landlords. (Compl. ¶¶ 14, 19, 24.) None of these allegations are sufficient to sustain Heights' claim, and therefore Heights' claims against Attorney General Ellison should fail for the independent reason that there are no factual allegations that he took any action with respect to Heights. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[A] must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.")

Similarly, the Contracts Clause provides that "[n]o *State* shall […] pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts." U.S. Const. Sec. 10 (emphasis added). The Contracts Clause applies to "States," not individual government actors. As with the takings claim in *Glow In One*, because the text of the relevant constitutional provision does not provide for individual liability, there can be no cause of action against Defendants in their individual capacities. Judgement on the pleadings is therefore appropriate on Heights claims under the Takings Clause and Contracts Clause.

## V.    THERE IS NO § 1983 CAUSE OF ACTION FOR A CONTRACTS CLAUSE VIOLATION.

The Court should also dismiss Heights' money damages claim under the Contracts Clause because a Contracts Clause violation is not cognizable under 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Section 1983 permits a private cause of action to be brought against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. However, "[t]he Supreme Court has never definitively held that an alleged Contracts Clause violation is cognizable as a § 1983 claim." *Kaminski v. Coulter*, 865 F.3d 339, 346 (6th Cir. 2017). As two of the three circuit courts that have considered the issue have determined, "an alleged Contracts Clause violation cannot give rise to a cause of action under § 1983." *Laborers' Int'l Union of N. Am., Loc. 860 v. Neff*,

29 F.4th 325, 334 (6th Cir. 2022) (citing *Kaminski v. Coulter*, 865 F.3d 339, 347 (6th Cir. 2017)); *Crosby v. City of Gastonia*, 635 F.3d 634, 640 (4th Cir. 2011). *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 413 n.2 (3d Cir. 2020) (acknowledging split between Sixth, Fourth, and Ninth Circuits but declining to resolve issue). Because an alleged Contracts Clause violation is not remediable through § 1983 and because the Court cannot create a vehicle through which to adjudicate these rights, Heights' Contracts Clause argument necessarily fails as a matter of law.

## CONCLUSION

The Court should grant Defendants' motion for judgment on the pleadings and dismiss what remains of Heights' Complaint in its entirety and with prejudice. Each cause of action fails on the face of the pleadings and no factual development is necessary or appropriate.

*Signature on Following Page*

Dated:  September 2, 2022

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota


/s/    Michael Goodwin
LIZ KRAMER (#0325089)
Solicitor General

MICHAEL GOODWIN (#0390244)
Assistant Attorney General

445 Minnesota Street, Suite 1100
St. Paul, Minnesota 55101-2128
liz.kramer@ag.state.mn.us
(651) 757-1010 (Voice)
michael.goodwin@ag.state.mn.us
(651) 757-1456 (Voice)

Attorneys For Defendants
Tim Walz and Keith Ellison

|#5296187-v1

21