UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| HEIGHTS APARTMENTS, LLC, and WALNUT TRAILS, LLLP, | Case No. 20-CV-2051 (NEB/DJF) |
| Plaintiffs, | ORDER ON MOTION FOR JUDGMENT ON PLEADINGS, MOTION TO STRIKE, MOTION TO AMEND, AND MOTION FOR JOINDER |
| v. | |
| TIM WALZ, in his individual and official capacity as Governor of the State of Minnesota, KEITH ELLISON, in his individual and official capacity as Attorney General of the State of Minnesota, and JOHN DOE, | |
| Defendants. | |

This lawsuit began in 2020 when Heights Apartments, LLC and another landlord sued Minnesota Governor Tim Walz and Attorney General Keith Ellison seeking to enjoin state executive orders related to the COVID-19 pandemic and to recover money damages for alleged harm. After this Court dismissed all claims and denied the request for an injunction as moot, Heights Apartments appealed.[1] The Eighth Circuit reversed this Court's dismissal in part and remanded the case for further proceedings. Before this Court now are several motions: Defendants' motion for judgment on the pleadings, (ECF

---

[1] The second plaintiff, Walnut Trails LLP, did not appeal the dismissal.

No. 55), Heights Apartments' motion to strike, (ECF No. 66), Heights Apartments' motion to amend, (ECF No. 75), and Heights Apartments' motion for joinder. (ECF No. 76). For reasons that follow, the Court grants Defendants' motion for judgment on the pleadings, (ECF No. 55), and it denies the remaining motions. (ECF Nos. 66, 75, 76.)

## BACKGROUND

### I. The COVID-19 Pandemic & Eviction Moratorium

COVID-19 is a highly contagious virus, which emerged in Minnesota in March 2020 and has since affected the lives of many Minnesotans. (ECF No. 1 ("Compl.") ¶ 8.) On March 13, 2020, Governor Walz declared a peacetime emergency to coordinate the state's plan to protect Minnesotans from COVID-19 and to slow the spread of the virus in the state. (*Id.*) Governor Walz issued a series of executive orders as a part of the state's response. (*Id.* ¶ 9.) Several executive orders temporarily restricted landlords' authority to evict residential tenants: Executive Orders 20-14 ("EO 20-14"), 20-73 ("EO 20-73"), and 20-79 ("EO 20-79"). (*Id.* ¶ 13. *See generally* ECF Nos. 1-1, 1-2, 1-3 (the state's eviction-mortarium executive orders).)

In EO 20-14, Governor Walz explained the connection between the economic consequences Minnesotans faced from the pandemic and the need for stable housing to control the spread of the virus:

> Public health and safety are promoted by stabilizing households which, through no fault of their own, may suddenly have the inability to afford rent. Providing a temporary moratorium on eviction actions allows these

> households to remain stably housed as they safeguard the health of themselves, their families, and other Minnesotans.

(ECF No. 1-1 at 2.) He also noted that the federal government and several other states took similar measures. (*Id.*) Under EO 20-14, eviction proceedings could commence only if tenants "seriously endanger[ed] the safety of other residents" or if they violated Minnesota Statutes Section 504B.171.[2] (*Id.*) EO 20-14 did not relieve tenants of their obligation to pay rent. (*Id.*) Any violation of the executive order by a landlord was a misdemeanor, punishable by a fine of up to $1,000 or imprisonment up to ninety days. (*Id.* at 3.) EO 20-14 was to remain in effect until the peacetime emergency ended or until the executive order was rescinded. (*Id.*) Later, in EO 20-73, Governor Walz clarified the eviction moratorium, explaining that it did not apply to "situations where a tenant seriously endangers the safety of others who are not residents." (ECF No. 1-2 at 1.)

Governor Walz eventually phased out the eviction restriction orders. In July 2020, Governor Walz replaced the existing eviction moratorium with EO 20-79, which took effect on August 4, 2020. (ECF No. 1-3.) EO 20-79 introduced another exception to the moratorium, excluding tenants who violated their leases by "significantly damag[ing] property." (*Id.* at 2.) The next year, Governor Walz and the state legislature agreed to phase out the executive orders entirely. *See* Act of June 29, 2021, ch. 8, art. 5, §§ 1–4, 2021

---

[2] Minnesota Statutes Section 504B.171 provides that tenants lose their right to possession of their residence by engaging in illegal activity related to drugs, firearms, prostitution, or stolen goods.

Minn. Laws 1st Spec. Sess. Governor Walz's COVID-19 peacetime emergency declaration ended on July 1, 2021, nullifying the moratorium. Act of June 30, 2021, ch. 12, art. 2, § 23, 2021 Minn. Laws 1st Spec. Sess.

## II.     Procedural History

Heights Apartments sued Governor Walz and AG Ellison in their individual and official capacities, seeking to enjoin the state's executive orders and to recover damages for alleged harm.[3] (*See* Compl. at 1.) It brings substantive claims under the Contracts Clause, the First Amendment, the Takings Clause, the Due Process Clauses of the Fifth and Fourteenth Amendments, 42 U.S.C. Section 1983, and *ultra vires* claims under state law. (*Id.* ¶¶ 44–81.) This Court dismissed all claims and denied the request for an injunction as moot. (ECF No. 37.) Heights Apartments appealed. The Eighth Circuit affirmed in part and reversed and remanded in part, holding that Heights Apartments had "sufficiently pleaded, at the dismissal stage of the proceedings, claims under the Contract Clause and Takings Clause." *Heights Apartments, LLC v. Walz*, 30 F.4th 720, 724 (8th Cir. 2022). The Eighth Circuit did not address qualified immunity or whether a cause of action for a Contracts Clause violation may be brought under Section 1983. *Id.* at 728 ("We assume, without deciding, the uncontested issue of whether a cause of action for a Contract Clause violation may be brought under § 1983.").

---

[3] Heights Apartments also sued state agent John Doe.

Defendants move for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (ECF No. 55.) Heights Apartments argues that Defendants' motion is procedurally improper, and it moves to strike or avoid the motion under Rules 12(f) and 12(g). (ECF No. 66.) Heights Apartments also moves to amend and join new plaintiffs. (ECF Nos. 75, 76.) The Court addresses each motion in turn, beginning with the motion to strike.

## ANALYSIS

### I.  Heights Apartments' Motion to Strike or Avoid

Heights Apartments' first argument that Defendants have filed improper, successive Rule 12 motions fails.[4] Parties must ordinarily raise all defenses and objections they have under Rule 12 in one pre-answer motion. Fed. R. Civ. Pro. 12(g)–(h). This requirement streamlines litigation by avoiding multiple motions at different stages, encouraging the swift resolution of disputes and promoting judicial efficiency. At the same time, the Federal Rules of Civil Procedure allow parties to move separately for

---

[4] Heights Apartments also asserts that this Court has already heard, considered, and ruled on Defendants' Eleventh Amendment immunity arguments. (ECF No. 71 at 4 & n.1.) The Court disagrees. When the issue was before the Court on Defendants' earlier Rule 12(b)(6) motion, the state's executive orders were still in effect. The Court therefore conducted its sovereign immunity analysis under *Ex parte Young*, 209 U.S. 123 (1908). *Heights Apartments, LLC v. Walz*, 510 F. Supp. 3d 789, 802–03 (D. Minn. 2020) (determining state Defendants were not entitled to sovereign immunity under *Ex Parte Young* "at th[at] stage of the proceedings"), *rev'd on other grounds*, 30 F.4th 720 (8th Cir. 2022). As explained below, now that the declaratory and injunctive relief claims are moot, *Ex parte Young* no longer applies. Thus, the Court may again evaluate whether it should dismiss the case on sovereign-immunity grounds.

5

judgment on the pleadings, after the pleadings have closed, but before trial. Fed. R. Civ. Pro. 12(c).

A Rule 12(c) motion is not an improper successive motion under the Federal Rules of Civil Procedure. A party may file a 12(c) motion even after it has filed another Rule 12 motion in the same case, so long as it is filed early enough not to delay trial. *Id.* Defendants answered the complaint. (ECF No. 53.) Discovery has not begun, and Defendants promptly filed their Rule 12(c) motion after remand. (ECF No. 55.) Defendants contend that the parties agree on the relevant material facts but disagree on the legal conclusions to be drawn from those facts, so the motion for judgment on the pleadings is properly before this Court.

## II.     Defendants' Motion for Judgment on Pleadings

Defendants are entitled to judgment on the pleadings because the complaint fails to state a claim as a matter of law. Heights Apartments sues three defendants: Governor Walz; AG Ellison; and an unnamed state agent, John Doe. (Compl. ¶¶ 5–7.) Only the Contracts Clause and Takings Clause claims remain on remand. Heights Apartments seeks declaratory relief, injunctive relief, and damages. (*Id.* at 19.) Because the executive orders are no longer in effect, the eviction restrictions have lifted, and Minnesota is no longer in a peacetime emergency, the claims for declaratory and injunctive relief are moot. *See Glow In One Mini Golf, LLC v. Walz*, 37 F.4th 1365, 1371 (8th Cir. 2022) (determining similarly). And there is nothing in the record suggesting that Governor

Walz will declare a second peacetime emergency, issue more executive orders, or issue new eviction limitations on landlords. *See id.* at 1372 (declining to apply the "capable of repetition yet evading review" mootness exception to plaintiffs' challenge of Minnesota's COVID-19 executive order restrictions).

Thus, the only relief left is for damages based on official-capacity claims and individual-capacity claims. As discussed below, the official-capacity claims are barred by the Eleventh Amendment. The individual-capacity claims are subject to qualified immunity analysis, and as explained below, qualified immunity shields Defendants from suit.

A.   *Official-Capacity Claims Are Barred by the Eleventh Amendment*

Heights Apartments' claims against Defendants in their official capacities are barred by the Eleventh Amendment. In an action under Section 1983, a public official may be sued in their official capacity, individual capacity, or both. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Heights Apartments seeks damages from Defendants in both their official and individual capacities.[5] (Compl. ¶¶ 5–6.) But the Eleventh Amendment bars claims for damages against state officials in their official

---

[5] The complaint is silent about the capacity in which it sues John Doe. The Court interprets the complaint as alleging only official-capacity claims against John Doe. *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007) ("If a plaintiff's complaint is silent about the capacity in which [he] is suing the defendant, we interpret the complaint as including only official-capacity claims.").

capacities because courts treat such suits as suits against the state, not the individual. *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016). Because the Eleventh Amendment protects state officials from lawsuits and the recovery of money damages, Defendants are entitled to Eleventh Amendment immunity unless the state has waived that immunity or Congress has enacted a statute allowing such suits. *Edelman v. Jordan*, 415 U.S. 651, 673 (1971) (waiver); *Becker v. Univ. of Neb. at Omaha*, 191 F.3d 904, 908 (8th Cir. 1999) (congressional enactment).[6] Defendants here are without question state officials. They are entitled to Eleventh Amendment immunity.

The Court is also not persuaded by Heights Apartments' argument about the interplay between the Takings Clause's just-compensation requirement and Eleventh Amendment immunity. (*See* ECF No. 71 at 5–6.) Federal courts have long held that the Eleventh Amendment prohibits property owners from filing federal-court actions seeking compensation from a state that has allegedly seized their property. *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 955 (9th Cir. 2008). Because the only remaining relief available for Heights Apartments is money damages, the Court dismisses the official-capacity claims against all Defendants.

---

[6] The Court finds no basis to conclude that Defendants waived their Eleventh Amendment immunity from suit under present circumstances. And Heights Apartments does not allege that Congress has enacted a statute allowing suits like the one it brings.

B.   *Individual Capacity Claims Are Barred by Qualified Immunity*

Heights Apartments' individual-capacity claims are barred by qualified immunity. Qualified immunity protects individual state actors from claims for damages when they exercise discretion in their official capacities. *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). As state agents, Defendants are entitled to qualified immunity so long as their conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). To determine whether the doctrine applies, the Court examines two questions: (1) whether a constitutional right was violated; and (2) whether the right was so clearly established then that a reasonable official in similar circumstances would know that his conduct was unlawful. *Vaughn v. Greene Cnty.*, 438 F.3d 845, 850 (8th Cir. 2006). It may address those questions in any order. *Pearson*, 555 U.S. at 236.

When performing a qualified-immunity analysis, the Court assesses the facts as they appeared to the relevant state actors. *Greinder v. City of Champlin*, 27 F.3d 1346, 1354 (8th Cir. 1994). Heights Apartments bears the burden of showing, by either controlling authority or a clear showing of persuasive cases, that Defendants violated a constitutional right that was clearly established at the time of the incident. *Bus. Leaders In Christ v. Univ. of Iowa*, 991 F.3d 969, 980 (8th Cir. 2021) (explaining plaintiffs must "point to existing circuit precedent that involves sufficiently similar facts to squarely govern [the individual

9

defendants'] conduct in the specific circumstances at issue, or, in the absence of binding precedent, to present a robust consensus of persuasive authority constituting settled law"). For the reasons stated below, Heights Apartments cannot make this showing on either its Takings Clause or Contracts Clause claims.

1. *Takings Clause*

The Takings Clause prohibits the taking of "private property . . . for public use, without just compensation." U.S. Const. amend. V. To prevail, Heights Apartments must show that Defendants' actions were not merely wrong or inappropriate, but that they were clearly unlawful under the Takings Clause. *Harlow*, 457 U.S. at 818.

Even if there was a taking, Heights Apartments has not shown that Defendants would have understood that their executive orders amounted to one. Qualified immunity applies "when an officer reasonably believes that his or her conduct complies with the law." *Pearson*, 555 U.S. at 244. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Glow In One Mini Golf*, 37 F.4th at 1374 (cleaned up and citation omitted). That is not the case here.

When Defendants issued the executive orders, there was no case law establishing that the orders were obviously unconstitutional. In opposition, Heights Apartments primarily relies on a trimmed quote of dicta from a recent Supreme Court case. (*See* ECF

No. 71 at 10 (citing *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071 (2021) ("The Court's physical takings jurisprudence is 'as old as the Republic.'" (citation omitted))).) But neither *Cedar Point Nursery* nor any other precedential case has held a government official personally liable for a government taking. *See Cedar Point Nursery*, 141 S. Ct. at 2071; *Glow In One Mini Golf*, 37 F.4th at 1375 (collecting cases). Indeed, most federal courts that have examined Takings Clause claims for COVID-19 eviction restrictions have concluded that such restrictions were not constitutional takings, even after *Cedar Point Nursery*. *See, e.g.*, *Jevons v. Inslee*, 561 F. Supp. 3d 1082, 1106–08 (E.D. Wash. 2021) (distinguishing *Cedar Point Nursery* and dismissing COVID-19 eviction moratorium Takings Clause claim as a matter of law), *appeal filed*, No. 22-35050 (9th Cir. Jan. 18, 2022); *Elmsford Apartment Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148, 162 (S.D.N.Y. 2020) (dismissing Takings Clause claim challenging a COVID-19 eviction moratorium because it was temporary); *Auracle Homes, LLC v. Lamont*, 478 F. Supp. 3d 199, 223 (D. Conn. 2020) (concluding the Takings Clause could not serve as the basis for enjoining COVID-19 executive orders that halted evictions); *Baptiste v. Kennealy*, 490 F. Supp. 3d 353, 388–90 (D. Mass. 2020) (same).

Following the Eighth Circuit's recent opinion in *Glow In One Mini Golf*, this Court also finds no support for the argument that "Governor Walz, in 2020, would have known that his [executive orders], issued in response to an unprecedented pandemic, constituted a taking for which just compensation was owed." 37 F.4th at 1375. Because it is not "beyond debate" whether Defendants violated a clearly established right, such that a

reasonable official in similar circumstances would have known that the conduct was unlawful, Defendants are entitled to qualified immunity on the Takings Clause claim. *Manning v. Cotton*, 862 F.3d 663, 668 (8th Cir. 2017) (citation omitted); *see also Glow In One Mini Golf*, 37 F.4th at 1375 (holding qualified immunity protected the same Defendants with similar COVID-19 executive orders).

2. *Contracts Clause*

Defendants are also entitled to qualified immunity on the Contracts Clause claim. The Contracts Clause prohibits states from infringing on private contractual obligations. U.S. Const. art. I, § 10, cl. 1. Again, because qualified immunity is intended to shield government officials from personal liability for actions taken within the scope of their duties, immunity applies unless the challenged state actions violate clearly established legal rights. *Harlow*, 457 U.S. at 818. Heights Apartments does not meet this burden on its Contracts Clause claim either.

Although the Eighth Circuit held the complaint stated a plausible claim under the Contracts Clause, its holding was far from established law. "[T]he panel decision on the Contracts Clause is an outlier among federal courts: it conflicts with a recent decision of the Ninth Circuit and decisions of every federal district court to consider the issue." *Heights Apartments*, 39 F. 4th 479, 481 (8th Cir. 2022) (Colloton, J., dissenting from denial of rehearing en banc). At the time of the Eighth Circuit's decision, each federal court to consider eviction moratoria under the COVID-19 backdrop held that they did not violate

the Contracts Clause. *See, e.g.*, *Apartment Ass'n of L.A. Cnty., Inc. v. City of L.A.*, 10 F.4th 905, 914 (9th Cir. 2021) (concluding the city's eviction moratorium did not violate the Contracts Clause), *cert. denied*, 142 S. Ct. 1699 (2022); *see also Baptiste*, 490 F. Supp. 3d 353, 386–87 (D. Mass. 2020) (denying preliminary injunction); *HAPCO v. City of Philadelphia*, 482 F. Supp. 3d 337, 354–56 (E.D. Pa. 2020) (same); *Auracle Homes*, 478 F. Supp. 3d 199, 225–26 (D. Conn. 2020) (same); *Elmsford Apartment*, 469 F. Supp. 3d 148, 172 (S.D.N.Y. 2020) (granting summary judgment for state Defendants on Contracts Clause claim); *Jevons*, 561 F. Supp. 3d 1082, 1101 (E.D. Wash. 2021), (E.D. Wash. Dec. 15, 2021) (same). The Eighth Circuit distinguished those cases by noting accurately that Minnesota's moratorium went further than others by not including an end-date, but it would not have been clear to reasonable officials in Defendants' positions "that [their] conduct was unlawful in the situation [they] confronted." *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021) (citation omitted). At the time the orders were issued, Defendants were responding to an unprecedented pandemic, and they employed measures that were similar to those implemented by the federal government and many other states and municipalities. *Glow In One Mini Golf*, 37 F. 4th at 1375. The law on this issue was far from clearly established, and Defendants are therefore entitled to qualified immunity.

Finally, Heights Apartments contends that it is "unreasonable" to believe that the Eighth Circuit would have remanded claims to this Court that were "futile as a matter of law." (ECF No. 71 at 5.) The Court disagrees. The Eighth Circuit reversed and remanded

13

for proceedings consistent with its opinion. *Heights Apartments*, 30 F.4th at 724. This Court has met its charge, and dismissal is the correct outcome. Because Heights Apartments' complaint must be dismissed under the qualified and sovereign immunity doctrines, the Court does not reach the parties' arguments on whether the Takings and Contracts Clauses provide for individual liability. The Court dismisses the individual-capacity claims against Defendants.

### III. Heights Apartments' Motion to Amend

Heights Apartments seeks to amend its complaint to reflect Minnesota's new program to assist low-income renters who experience financial hardship. (ECF No. 75 at 1–2.) The motion fails on its merits. The proposed amendment cannot overturn Defendants' entitlement to sovereign and qualified immunity. Heights Apartments' only remaining relief is damages against Defendants, and Defendants are entitled to sovereign and qualified immunity against such suits. *See, e.g.*, *Kruger*, 820 F.3d at 301 (sovereign immunity); *Glow In One Mini Golf*, 37 F.4th at 1375 (qualified immunity). Thus, the amendment would be futile, and the motion must be denied. *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) ("A motion for leave to amend a pleading is futile when the amended pleading would not be able to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).").

### IV. Heights Apartments' Motion for Joinder

Heights Apartments also moves to join similarly suited plaintiffs. (ECF No. 76 at 1–2.) Having determined that plaintiff's motion to amend would be futile, the Court denies the motion for joinder as moot. At any rate, Heights Apartments fails to adequately provide new allegations about the similarly suited plaintiffs it names. Heights Apartments states merely in conclusory fashion that the new plaintiffs "each has been subject to the EOs at issue, each has had tenants who have violated their contract, each has been unable to bring an eviction action based on the EOs at issue, and each has been damaged . . . ." (ECF. No. 78-1 ¶ 42.) Such threadbare and conclusory assertions are not afforded an assumption of truth on review for dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court need not "engage in a guessing game" to decipher how Heights Apartments' might have amended its complaint to cure those substantive deficiencies. *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 914 (8th Cir. 2002).

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' motion for judgment on the pleadings (ECF No. 55) is GRANTED;

2. Heights Apartments' motion to strike (ECF No. 66) is DENIED;

3. Heights Apartments' motion to amend (ECF No. 75) is DENIED; and

4. Heights Apartments' motion for joinder (ECF No. 76) is DENIED AS MOOT.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: June 20, 2023                               BY THE COURT:

                                                   s/Nancy E. Brasel
                                                   Nancy E. Brasel
                                                   United States District Judge